UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONOCOPHILLIPS GULF OF PARIA B.V., <br><br> Petitioner, <br><br> v. <br><br> CORPORACIÓN VENEZOLANA DEL PETRÓLEO, S.A., and PETRÓLEOS DE VENEZUELA, S.A., <br><br> Respondents. | Case No. 19-cv-7304 <br><br> **Oral Argument Requested** |

**PETITION TO CONFIRM, RECOGNIZE AND ENFORCE ARBITRATION AWARD**

Petitioner, ConocoPhillips Gulf of Paria B.V. ("CGP" or "Petitioner"), by and through the undersigned counsel, hereby petitions this Court for an order and judgment confirming, recognizing and enforcing an arbitration award against Corporación Venezolana del Petróleo, S.A. and Petróleos de Venezuela, S.A. (together, the "Respondents"). The Petition is supported by an accompanying memorandum of law and the Declaration of Elliot Friedman dated August 5, 2019 ("Friedman Decl."), with Exhibits. In support of this Petition, CGP respectfully states as follows:

**Nature of Action**

1. Petitioner brings this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), to confirm, recognize and enforce a final, binding arbitration award issued in New York, New York, on July 29, 2019 (the "Final Award"),[1] by an arbitral tribunal (the

---

[1] The ICC transmitted a copy of the Final Award to the parties on August 2, 2019.  Friedman Decl., ¶ 4.

"Tribunal") duly constituted under the auspices of the International Chamber of Commerce ("ICC") in *ConocoPhillips Gulf of Paria B.V. v. Corporación Venezolana del Petróleo, S.A. and Petróleos de Venezuela, S.A.*, Case No. 22527/ASM/JPA (the "Arbitration").  Friedman Decl., ¶ 4 & Ex. A.

2. CGP respectfully requests that this Court confirm, recognize, and enforce the Final Award and incorporate its terms into a judgment in favor of Petitioner.  Petitioner also seeks to recover the fees and expenses incurred in confirming the Final Award, along with further relief as this Court may find just and proper.

## Parties

3. Petitioner ConocoPhillips Gulf of Paria B.V. is an indirectly wholly owned subsidiary of ConocoPhillips Company.  CGP is incorporated under the laws of The Kingdom of the Netherlands, having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, The Hague, Netherlands.  At the time of the expropriation by the Bolivarian Republic of Venezuela ("Venezuela") of large parts of the country's oil industry, leading to the dispute underlying the Final Award, CGP held a 32.2075 percent interest in the Corocoro Project, an offshore crude oil project located in the Gulf of Paria between the coasts of Venezuela and Trinidad.

4. Respondent Petróleos de Venezuela, S.A. ("PDVSA") is the national oil company of Venezuela, wholly owned by Venezuela and incorporated in Caracas, Venezuela.

5. Respondent Corporación Venezolana del Petróleo, S.A. ("CVP"), a corporation organized and existing under the laws of Venezuela, is a wholly owned subsidiary of Respondent PDVSA.

**Jurisdiction and Venue**

6. The Arbitration was seated, and the Final Award was rendered, in New York City. Petitioner brings this summary proceeding under Chapter 2 of the FAA, 9 U.S.C. §§ 201 *et seq.*, and Article III of the New York Convention, to confirm, recognize and enforce the Final Award.

7. This Court has jurisdiction over the subject matter of this proceeding under 9 U.S.C. § 203, which provides that the "district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding "fall[s] under the Convention" because the Final Award arises out of commercial contracts between Petitioner and Respondents—the Association Agreement, Guarantee, and Consortium Agreement, as defined herein—none of which is a citizen of the United States. *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship was "entirely between citizens of the United States").

8. Venue is proper in this District under 9 U.S.C. § 204, because the Association Agreement, Guarantee, and Consortium Agreement (described further herein) specify New York City as the seat of arbitration. *See* 9 U.S.C. § 204 (providing that an "action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought . . . in such court for the district . . . which embraces the place designated in the agreement as the place of arbitration if such place is within the United States").

9. PDVSA is an instrumentality of a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* This Court has personal jurisdiction over PDVSA as an agency or instrumentality of Venezuela under 28 U.S.C. § 1330(b), which confers "[p]ersonal jurisdiction over a foreign state" and any "agency or instrumentality" thereof "as to

every claim for relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605–1607, and over which the Court has subject matter jurisdiction. 28 U.S.C. § 1330(a)–(b); 28 U.S.C. § 1603(a)–(b).

10. PDVSA is not immune from the jurisdiction of this Court for purposes of this Petition because the FSIA denies immunity to foreign states (or their instrumentalities, as defined in 28 U.S.C. § 1603(a)) in an action to confirm an arbitral award governed by the New York Convention. Specifically, the FSIA provides that a foreign state (or its instrumentality) is not immune to jurisdiction in a suit:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to . . . confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6). As noted above, the Final Award is governed by the New York Convention, which is in force in the United States. *See* 9 U.S.C. § 201.

11. This Court also has personal jurisdiction over both Respondents pursuant to 9 U.S.C. § 9 (applicable here under 9 U.S.C. § 208) and Federal Rule of Civil Procedure 4(k), because the Respondents consented to arbitrate in New York, did in fact arbitrate in New York, and the Award was rendered in New York. *See In re Coudert Bros. LLP*, No. 16-CV-8237, 2017 WL 1944162, at *4 (S.D.N.Y. May 10, 2017) ("By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court.") (citing *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.")). Further, if CVP were deemed an organ, agency or instrumentality of a foreign

state within the meaning of 28 U.S.C. § 1603, this Court would also have personal jurisdiction over it pursuant to 28 U.S.C. § 1330(b).

## Background

### a) The Parties' Agreements

12. The Final Award results from disputes between Petitioner and Respondents that arose under an Association Agreement, Guarantee, and Consortium Agreement between the parties, specifically:

   a. the Association Agreement between Conoco Venezuela B.V. (of which Petitioner CGP is the successor in interest) and Respondent CVP, dated July 10, 1996. Friedman Decl., ¶ 7 & Ex. B;

   b. the Guarantee of Proper Performance between Conoco Venezuela B.V. (of which CGP is the successor in interest) and Respondent PDVSA, dated July 10, 1996. Friedman Decl., ¶ 7 & Ex. C;

   c. the Consortium Agreement between, among others, Conoco Venezuela C.A. (of which CGP is the successor in interest), and CVP, dated May 16, 2003. Friedman Decl., ¶ 7 & Ex. D.

13. The Association Agreement, Guarantee, and Consortium Agreement set forth the commercial terms of an arrangement under which CGP would invest and participate in an offshore oil project in the Gulf of Paria, Venezuela (the "Corocoro Project").

14. In the early 1990s, the Venezuelan government decided, as a matter of strategic and economic priority, to develop the country's vast hydrocarbon resources. The Venezuelan government recognized that it did not have the means or ability to carry out that task alone. *See* Friedman Decl., Ex. A, ¶ 18.

15. Venezuela therefore embarked on the *Apertura Petrolera*, or "Oil Opening." To induce foreign investors to return to an oil industry that had been nationalized less than 20 years before, Venezuela offered incentives, including majority equity stakes in long-term oil projects, and favorable income tax and royalty regimes. *See id.* at ¶ 18. On the basis of these fiscal

inducements and contractual protections, CGP invested in the Corocoro Project. *See id.* at ¶¶ 26–37.

16. As part of that investment, in 2003, Petitioner and the other private investors in the Corocoro Project granted Respondent CVP a loan so that it could finance its purchase of a 35% interest in the Corocoro Project. *See id.* at ¶ 35.

17. Respondents never repaid that loan. In addition, beginning in 2004, the Venezuelan government undertook a series of acts that eventually resulted in the confiscation of the Corocoro Project and its delivery into Respondents' hands in 2007, without any compensation paid to Petitioner. *See id.* at ¶¶ 38–54.

18. In addition to the Corocoro Project, Venezuela expropriated two other oil projects in which ConocoPhillips Company entities were participants: the Petrozuata and Hamaca Projects. Venezuela's expropriations eventually led to three separate arbitrations. First, Petitioner and the relevant ConocoPhillips entities commenced an arbitration against Venezuela for, *inter alia*, the unlawful expropriation of their investments in the Corocoro, Petrozuata, and Hamaca Projects. That arbitration proceeding was heard under the auspices of the International Centre for Settlement of Investment Disputes ("ICSID"), an arm of the World Bank, and was premised on an international law instrument—a bilateral investment treaty. The claims asserted were governed by international law. The final award in that arbitration was rendered on March 8, 2019. The ICSID tribunal found Venezuela to have effected an expropriation in violation of international law, and awarded the claimants damages amounting to US $8,754,907,155. *See* Friedman Decl., ¶ 12 & Ex. E, ¶ 1010. This award is now the subject of rectification proceedings before the ICSID tribunal (initiated by Venezuela to correct claimed computational errors), and recognition and enforcement proceedings in the District Court for the District of Columbia. *See ConocoPhillips*

*Petrozuata B.V. et al. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-00683 (D.D.C. filed Mar. 11, 2019); Friedman Decl., Ex. F.

19. Second, on October 10, 2014, the ConocoPhillips entities involved in the Petrozuata and Hamaca Projects brought two contractual ICC arbitration claims against PDVSA and the subsidiaries of PDVSA that were their counterparts in the Petrozuata and Hamaca Projects under the relevant Venezuelan national law instruments. These cases were subsequently consolidated. An award was rendered on April 24, 2018. On April 26, 2018 a petition for recognition and enforcement was filed in the District Court for the Southern District of New York; the award was subsequently confirmed and entered as a judgment in *Phillips Petroleum Co. Venezuela Ltd. et al. v. Petróleos De Venezuela, S.A. et al.*, No. 1:18-cv-03716 (S.D.N.Y. August 23, 2018). *See* Friedman Decl., ¶ 13 & Exs. G, H.

20. Third, on December 30, 2016, Petitioner brought its own contractual ICC arbitration claim against CVP and PDVSA under the Association Agreement, Guarantee, and Consortium Agreement. That arbitration is the subject of this Petition.

   b) *The Agreements to Arbitrate*

21. The Association Agreement, Guarantee, and Consortium Agreement provided for arbitration in the event of a dispute between the parties. The arbitration clauses in all of those contracts are consistent, providing for arbitration under the rules of the ICC and with the seat of arbitration in New York City:

   a. Section 25.2(a) of the Corocoro Association Agreement provides as follows:

   > *Any dispute arising out of or concerning this Agreement regarding matters not within the competence of the Control Committee shall be settled exclusively and finally by arbitration. The arbitration shall be conducted and finally*

> *settled by three (3) arbitrators . . . in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce as in effect on the date of this Agreement . . . or such other rules as may be agreed by all of the Parties involved. . . . All arbitration proceedings under this Agreement shall be conducted in New York City (United States of America). . . . Any decision or award of the arbitral tribunal (or the arbitrator) shall be final and binding upon the Parties.*

    b.    Section 11 of the Corocoro Guarantee provides as follows:

> *Any dispute concerning the legal interpretation or construction of this Guarantee shall be settled exclusively and finally by arbitration. The arbitration shall be conducted in accordance with the ICC Rules. . . . The arbitration shall be conducted in New York City (United States of America). Notwithstanding the foregoing in the event that a dispute involves both* [PDVSA] *and CVP, arbitration shall be conducted in accordance with Clause 25.2 of the* [Association] *Agreement as a single proceeding, and* [PDVSA] *and CVP shall jointly have the rights of CVP under such Clause 25.2.*

    c.    Section X of the Consortium Agreement provides as follows:

> *Any dispute between the Members of the Consortium regarding this Agreement shall be resolved pursuant to the procedures set forth in Article 25.2 of the Partnership* [*i.e.*, Association] *Agreement.*

Friedman Decl., Ex. B at § 25.2(a); Ex. C at § 11; Ex. D at § X.

### c) CGP Commenced Arbitration Proceedings

22. CGP commenced the Arbitration that is the subject of this Petition on December 30, 2016 by filing a Request for Arbitration. Friedman Decl., Ex. A, ¶ 76.

23. The Tribunal was constituted on May 24, 2017 in accordance with the ICC Rules. It consisted of two co-arbitrators, Professor Laurent Aynès (appointed by Petitioner) and Professor Andrea Giardina (appointed by Respondents), who together nominated Dr. Laurent Lévy as President of the Tribunal. Friedman Decl., ¶ 9 & Ex. A, ¶¶ 78–80.

24. As stipulated in the Association Agreement, the legal seat of the arbitration was New York, New York. The Arbitration hearing physically took place in Washington, D.C.

25. Pursuant to the timetable established by the Tribunal, the parties exchanged briefing (accompanied by witness statements, expert reports and exhibits) and engaged in document discovery. The initial Case Management Conference was held on July 13, 2017, via telephone. The parties made written submissions to the Tribunal in support of their claims on October 13, 2017, June 8, 2018, and February 11, 2019 (by Petitioner); and on January 12, 2018, September 14, 2018 and February 1, 2019 (by Respondents). The Tribunal convened a final hearing between October 29, 2018 and November 2, 2018. Friedman Decl., ¶ 10.

26. The parties were represented by counsel throughout the course of the Arbitration. Respondents were represented by attorneys of the law firms Curtis, Mallet-Provost, Colt & Mosle LLP and De Jesús & De Jesús.

### d) The Final Award

27. The Tribunal rendered its unanimous Final Award on July 29, 2019, in New York, New York. A copy of the Final Award was delivered to the parties on August 2, 2019. Friedman Decl., ¶ 4 & Ex. A. The Final Award is binding upon the parties.

28. The Tribunal found Respondents liable for their failure to repay the loan given to CVP in 2003 to finance its purchase of a 35% stake in the Corocoro oil field. *See* Friedman Decl., Ex. A, ¶ 423. The Tribunal dismissed CGP's other claims. *See id.*

29. The Tribunal ordered Respondents to pay Petitioner the sum of US $33,700,000, plus interest running from October 22, 2002 until the date of full and final payment. Interest amounts to US $23,126,769 as of the date of this submission. Friedman Decl., ¶ 5 & Ex. A, ¶¶ 375, 423.ii–iii. The Tribunal further ordered Petitioner to pay Respondents the amount of

US $2,500,000 in legal fees and other expenses, and ordered Respondents to reimburse to Petitioner the sum of US $242,500 in arbitration costs.[2] Friedman Decl., ¶ 5 & Ex. A, ¶¶ 423.vii–viii.

30. The net aggregate value of the Final Award to Petitioner, at present, is US $54,569,269 (inclusive of interest to date). Friedman Decl., ¶ 5.

31. The Award has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the Award was made.

### e)  *Respondents Have Not Paid the Final Award*

32. Respondents have not paid Petitioner any portion of the Final Award. *Id.* at ¶ 14.

33. Pursuant to 9 U.S.C. § 207, Petitioner has brought this action within three years after the Award was issued on July 29, 2019.

## COUNT I
## (Confirmation of Award 9 USC § 207)

34. CGP incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

35. The United States is a contracting party to the New York Convention (as is Venezuela).[3]

36. The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*), because the

---

[2] The Award orders Respondents to reimburse Petitioner for certain fees and expenses in the amount of €213,302.55. Friedman Decl., Ex. A, ¶ 423.viii. The Award states that this Euro-denominated figure is equivalent to US $242,500. *Id.* at ¶ 422.i. For simplicity, the figures provided in this submission are denominated solely in US dollars.

[3] *See* New York Arbitration Convention, Contracting States, http://www.newyorkconvention.org/countries (last accessed July 31, 2019).

Final Award arises out of commercial contracts between Petitioner and Respondents, none of whom is a citizen of the United States. *See* 9 U.S.C. § 202.

37. Article IV of the New York Convention provides that a party applying for recognition and enforcement of an award, such as Petitioner here, "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] or a duly certified copy thereof." A copy of the Final Award, duly authenticated and transmitted to Petitioner, is submitted herewith as Exhibit A to the Friedman Declaration.

38. The parties' agreements to arbitrate are found in section 25.2 of the Corocoro Association Agreement, section 11 of the Corocoro Guarantee, and section X of the Consortium Agreement. Those agreements are appended as Exhibits B, C, & D to the Friedman Declaration.

39. The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

40. Pursuant to Article 22 of the applicable 1988 ICC Rules, the Award was made at the place of the arbitration proceedings, which is New York, New York, United States of America.

41. Pursuant to Article 24 of the applicable 1988 ICC Rules, the arbitral Award "shall be final."

42. In addition, the Corocoro Association Agreement and Corocoro Guarantee expressly provide that arbitration rulings will be "binding" and "final" respectively. *See* Friedman Decl., Ex. B, § 25.2(a) & Ex. C, § 11.

43. The Final Award is therefore final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

44.     9 U.S.C. § 207 provides that, in an action to confirm an award governed by the New York Convention, the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

45.     For awards governed by the New York Convention rendered in the United States, the domestic provisions of the FAA apply, which provide that a court may vacate an arbitration award only in certain narrow circumstances expressly enumerated in the FAA.  *See* 9 U.S.C. § 10.

46.     The party resisting confirmation or seeking vacatur of an award has the "heavy" burden of proving that one of the explicit grounds enumerated in the FAA or the New York Convention applies.  *See Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (party opposing confirmation has the burden to prove that one of the defenses applies and noting that the "burden is a heavy one, as the showing required to avoid summary confirmance is high") (internal citations omitted).  As explained further in the accompanying Memorandum of Law, none of the New York Convention's or the FAA's enumerated grounds for refusing or deferring recognition applies to this Final Award.

47.     For the foregoing reasons, Petitioner is entitled to an order confirming, recognizing, and enforcing the Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention. Petitioner respectfully requests the Court to confirm the Final Award by entering judgment in favor of Petitioner and against Corporación Venezolana del Petróleo, S.A. and Petróleos de Venezuela, S.A. in the amount of the Final Award with interest as provided therein, plus the costs of this proceeding.

## **Prayer**

WHEREFORE, Petitioner ConocoPhillips Gulf of Paria B.V. respectfully requests:

a. an Order pursuant to 9 U.S.C. § 207 and Article III of the New York Convention confirming, recognizing, and enforcing the Final Award and entering Judgment thereon;

b. a Judgment in favor of ConocoPhillips Gulf of Paria B.V., and against Corporación Venezolana del Petróleo, S.A. and Petróleos de Venezuela, S.A., in the net amount awarded to ConocoPhillips Gulf of Paria B.V. in the Final Award, US $54,569,269 (inclusive of interest to date), plus additional interest as provided by the Final Award;

c. an Award of Petitioner's costs of this civil proceeding, including reasonable attorneys' fees incurred in bringing this proceeding;

d. an Order retaining jurisdiction in this Court over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments, which may be obtained by Petitioner against Corporación Venezolana del Petróleo, S.A. and Petróleos de Venezuela, S.A.; and

e. any other relief that this Court, in the interests of justice, deems necessary and proper.

A proposed order is appended hereto.

Dated: August 5, 2019
New York, New York

        Respectfully submitted,

        By:_____/s/ Michael S. Kim_____

        Michael S. Kim
        Marcus J. Green
        Josef M. Klazen
        KOBRE & KIM LLP
        800 Third Avenue
        New York, New York 10022
        T +1 (212) 488-1200

        Elliot Friedman
        Sam Prevatt
        Cameron Russell
        FRESHFIELDS BRUCKHAUS DERINGER US LLP
        601 Lexington Avenue 31st Floor
        New York, New York 10022
        T +1 (212) 277-4000

        D. Brian King (*pro hac vice* motion forthcoming)
        New York University School of Law,
        40 Washington Square South, Room 508
        New York, New York 10012
        T +1 (212) 992-8175

        *Attorneys for Petitioner ConocoPhillips Gulf of Paria B.V.*